**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| LAURA Y. RICHARDSON,[1] )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | 1:08-cv-142-SEB-DML |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Laura Y. Richardson ("Richardson") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further consideration.**

**I. BACKGROUND**

Richardson filed applications for DIB and SSI on January 23, 2006, alleging an onset date of disability of July 1, 2005. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted by video on August 8, 2007. Richardson appeared in Danville, Illinois, accompanied by her attorney, and the ALJ, Barbara Welsch, presided from Peoria, Illinois. Medical and other records were introduced into evidence, and Richardson, her daughter, and a vocational expert testified at the hearing. The ALJ issued a decision on September 10, 2007, denying benefits. On December 7, 2007, the Appeals Council denied Richardson's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] The plaintiff's first name is spelled "Laura." The clerk shall update the docket accordingly.

The ALJ's decision included the following findings: (1) Richardson met the insured status requirements of the Act through December 31, 2006; (2) Richardson testified that she had not engaged in substantial gainful activity since July 1, 2005, the alleged onset date; (3) Richardson had severe impairments including an affective disorder (bipolar and/or depression), anxiety, asthma, insomnia, a history of fracture of the second and third metatarsal of the right foot, obesity and substance abuse; (4) Richardson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Richardson had not demonstrated that she lacked the residual functional capacity ("RFC") to perform work activity at all exertional levels with the exceptions that she is limited to routine and repetitive work without constant interaction with others due to her affective disorder (bipolar and/or depression) and substance abuse; (6) Richardson was unable to perform any past relevant work; (7) Richardson was born on August 8, 1964 and was a younger individual age 18-49 on the alleged disability onset date, had at least a high school education and was able to communicate in English; (8) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework, they support a finding that Richardson was "not disabled" whether or not she had transferable job skills; (9) considering Richardson's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Richardson had not been under a "disability" as defined in the Act from July 1, 2005, through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his

2

past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Richardson had severe impairments consisting of affective disorder (bipolar and/or depression), anxiety, asthma, insomnia, a history of fracture of the second and third metatarsal of the right foot, obesity and substance abuse, but that she could perform a significant number of jobs in the national economy. Richardson argues that the ALJ's decision is not supported by substantial evidence. Specifically, Richardson contends that the ALJ misstated and ignored evidence favorable to Richardson's claim; the ALJ's credibility determination was erroneous and did not comply with Social Security Ruling ("SSR") 96-7p; and substantial evidence did not support the ALJ's RFC determination, which in turn tainted the hypothetical question posed to the vocational expert and the ALJ's ultimate finding at step five.

Richardson argues that the ALJ misstated and ignored portions of the evidence from treating sources which favored her claim of disability. She asserts that the ALJ ignored evidence from treating Nurse Practitioner Socha which reflected the severity of Richardson's bipolar disorder. Richardson acknowledges that the ALJ mentioned NP Socha's April 2007 report that Richardson was no longer seeking counseling at Wabash, was no longer taking her medications, and that Paxil was not helping. (R. at 20, citing R. at 224). Richardson argues that the ALJ failed to mention that in that same report, NP Socha noted that Richardson reported that two weeks before she had had an episode that lasted 3 days, "started out agitated, depressed, mad, then crying & happy - had 2 asthma attacks then after that, extremely tired." (R. at 224). Richardson reported that it had been one of the worst episodes she had ever had and that she had been out of control. *Id.* Richardson further states that the ALJ also ignored Socha's report that Richardson had "trouble sleeping sometimes doesn't sleep at all. Doesn't feel tired. Does 'crash' after a few days of this....Rapid speech." The ALJ, however, did reference this notation. (R. at 19).

3

Richardson also asserts that the ALJ ignored pages of treatment notes in Exhibit 6F from Wabash Valley Outpatient Hospital explaining the severity of her mental impairment, including symptoms of anxiety, insomnia, inability to sleep, rapid speech, auditory hallucinations, feeling empty, lack of energy, paranoid thinking and low GAF scores between 40 and 60. Although the ALJ referenced various pages of these records, she focused her discussion primarily on reports of Richardson's substance abuse. (R. at 20).

In further support of her claim that the ALJ misstated the record, Richardson argues that the ALJ failed to discern that her bipolar disorder resulted in her having good days, very good days, bad days, and very bad days, and that her alcohol use was a means of self-medicating. She argues that the ALJ improperly determined that her symptoms were created by her substance abuse, not her bipolar disorder, quoting *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("What is clear is the reverse - that bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms."). She also contends that the ALJ misunderstood the fact that bipolar disorder is episodic and that the failure to seek consistent treatment is a manifestation of the disorder itself. In asserting these complaints, Richardson, in essence, urges the court to review the ALJ's decision through the eyes of a mental health clinician experienced in the nature and nuances of bipolar disorder.

According to Richardson, the ALJ should have recognized her lack of understanding of bipolar disorder and called upon a medical expert to help evaluate the claim. While the court does not and need not dispute the complex and episodic nature of bipolar disorder, its limited role is not to attempt a *de novo* determination of Richardson's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. The crucial point here is that Richardson has pointed to no medical source opinion stating that Richardson's failure to seek treatment was a symptom of her mental impairment or that Richardson's substance abuse, although referenced on one occasion by a therapist as "self-medicating" (R. at 183), was merely a common *symptom* of bipolar disorder. Richardson cites to research suggesting various factors that contribute to substance abuse among patients with bipolar disorder, but such research was not part of the record nor would it directly assist in an evaluation of Richardson's specific limitations. The court cannot find error where the record itself does not support Richardson's declarations.[2]

---

[2]This is not to say that Richardson's claim that the ALJ ignored significant findings by treating sources is entirely without merit. The court agrees that although the ALJ referred to, for example, the reports of therapist Amos Miller, she did not discuss or weigh the findings contained in Miller's functional assessment of July 12, 2006, including Richardson's severe uncontrolled anxiety and severe difficulty completing household tasks due to her inability to stay focused. (R. at 177- 181, Ex. 6F4-8). *See also* Miller's September 2005 functional assessment (R. at 194-200) (severe symptoms of depression, staying in bed for a week). As discussed below, this issue overlaps Richardson's challenges to the ALJ's credibility determination. On remand, the ALJ shall articulate the weight she gives to the therapists' functional assessment.

As noted, Richardson contends that the ALJ failed to properly evaluate her credibility. Richardson argues that the ALJ failed to consider the appropriate factors under SSR 96-7p and 20 C.F.R. § 404.1529 and that the ALJ's reasoning reflects a lack of understanding of bipolar disorder. The Commissioner responds that the ALJ did consider the proper factors and that her credibility determination was not patently wrong.

The ALJ stated that in evaluating Richardson's symptoms, she "used Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529, 416.929." (R. at 20).[3] The ALJ discussed Richardson's alleged disability due to bipolar disorder/depression and her substance abuse. (R. at 20).  The credibility rationale recited by the ALJ include: Richardson had not required psychiatric hospitalizations since her alleged onset date and she frequently missed therapy appointments; she had been unable to maintain a significant period of abstinence from substance abuse; when drinking Richardson would become more manic, angry and uncontrollable, although at other times she alleged sobriety was responsible for her increased mental symptoms; Richardson said she was never depressed when using alcohol; and Richardson's work-related limitations were due to her symptom exacerbation including during times of substance abuse. (R. at 20). The ALJ concluded that Richardson's "allegation of disabling impairments" was not credible and that Richardson was "not disabled despite her substance abuse." (R. at 20-21).

The ALJ stated that Richardson's statements concerning the intensity, persistence and limiting effects of medically determinable symptoms were not credible. (R. at 17). The reasons given for finding Richardson not credible, however, did not relate to Richardson's descriptions of her symptoms. The court finds it troubling that the ALJ apparently limited her credibility finding to an evaluation of Richardson's "allegation of disabling impairments." (R. at 21). Such an analysis begs the question as to a claimant's disability which is to be determined by the completion of the entire sequential process. The regulations acknowledge the fact that "symptoms sometimes suggest a greater severity of impairment

---

[3]Social Security Ruling ("SSR") 96-7p and 20 C.F.R. §§ 404.1529, 416.929 identify seven examples of the type of evidence the ALJ will consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements about symptoms:

(1) The individual's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate and aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
(5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
(6) Any other measures the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);
(7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

than can be shown by objective medical evidence alone" and direct ALJs to "carefully consider any other information you may submit about your symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). The ALJ did not discuss whether she found Richardson's allegations credible as to her symptoms of depression or anxiety, her problems getting along with people, and her inability to sustain attention and concentration. The ALJ did not evaluate Richardson's allegations as to her limited daily activities, the amount of time she spent in bed depressed, the difficulties she faced attempting to clean her home or in performing other household chores, whether she could focus her attention longer than a few minutes to watch TV, read, or care for her grandchildren, and other allegations concerning her ability to function. Nor did the ALJ articulate the weight given to the corresponding reports of such difficulties reported by treating therapists. (R. at 174-218). "'The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear ... the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir.2003)(quoting SSR 96-7p). Because the ALJ failed to explain the weight given to Richardson's statements, the court cannot affirm the ALJ's credibility analysis.

On remand, the ALJ shall articulate her assessment as to what extent Richardson's allegations of her symptoms are credible and shall support that determination with evidence of record. The ALJ shall articulate how she determined Richardson's credibility based on the various factors listed in SSR 96-7p and 20 C.F.R. §§ 404.1529, 416.929. The ALJ shall also keep in mind that reliance on a claimant's minimal daily activities does not form an adequate basis to discredit her allegations of disability. The Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home," and ignoring *how* a claimant carried out such activities. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (internal quotation omitted). *See also Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Next, Richardson argues that the ALJ failed to include certain functional limitations which were supported by substantial evidence in her RFC assessment, which also caused the hypothetical question posed to the vocational expert to be incomplete. Specifically, Richardson argues that the ALJ failed to include in the hypothetical question her findings that Richardson had moderate limitations in social functioning and moderate limitations in her ability to concentrate and attend. (R. at 19, 21). Whether the ALJ's RFC is supported by substantial evidence requires further discussion. In turn, if the RFC is incomplete, the hypothetical posed to the vocational expert would be flawed.

"Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir.2004). The ALJ's hypothetical posed to the vocational expert was that Richardson had no exertional limitations, she could not work in an environment with a concentrated exposure to respiratory irritants, and she would be limited to jobs which are routine and repetitive in nature without constant interaction with others. (R. at 288).

The ALJ limited Richardson to routine and repetitive work (due to moderate problems with concentration, persistence and pace) and to work without constant interaction with others (due to moderate problems with social functioning). (R. at 17). The ALJ cited no evidence, however, from either a vocational expert or a mental health source, supporting her translation from "moderate problems with concentration, persistence and pace" to "routine and repetitive work." Similarly, the ALJ did not articulate on what evidence she based her conclusion that a restriction to "work without constant interaction with others" adequately reflected Richardson's moderate problems with social functioning. *See Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (ALJ's RFC of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" did not adequately reflect the evidence that the claimant had significant impairments in social judgment).

The court agrees with Richardson that the ALJ's restrictions do not adequately reflect the evidence supporting the findings of moderate limitations in the areas of concentration, persistence and pace and social functioning. Dr. Larsen, State Agency reviewer upon whose opinion the ALJ relied in large part, opined that in the category of "social functioning," Richardson was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (R. at 157). Dr. Larsen further opined that Richardson was moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* The ALJ did not articulate any basis for failing to include these restrictions in the RFC and the hypothetical question posed to the vocational expert. Instead, the ALJ only included a restriction on "constant interaction with others," a concept sufficiently distinct from the limitations indicated by Dr. Larsen to be meaningful. "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young*, 362 F.3d at 1005 (case remanded in part because ALJ failed to incorporate evidence that claimant was moderately limited in his ability to interact with general public, to accept instruction, and to respond appropriately to criticism from supervisors). Accordingly, the ALJ's RFC determination and hypothetical question posed to the vocational expert are not supported by substantial evidence.

Finally, Richardson contends that the vocational expert testimony was not consistent with information contained in the Dictionary of Occupational Titles ("DOT"). *See Overman v. Astrue*, 546 F.3d 456, (7th Cir. 2008) ("the ALJ's affirmative duty extends beyond merely asking the VE whether his testimony is consistent with the DOT; the ALJ also must elicit a reasonable explanation for any discrepancy," but only if any conflict was *apparent* at the hearing) (internal quotation omitted) (emphasis in original). Richardson does not argue that the inconsistency between the vocational expert testimony and the DOT was obvious at the hearing and, therefore, the case would not be remanded on this basis alone. *Id.* Because the decision is being remanded on other grounds, however, the ALJ shall investigate in greater depth whether job information cited by a vocational expert is consistent with the DOT.

7

For the reasons set forth above, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning in determining Richardson's ability to perform work activities on a regular and continuing basis. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . .. [and to enable] us to trace the path of [his] reasoning") (internal quotation omitted).

### III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions at step four and step five of the sequential analysis are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/23/2009

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana